UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA DIMPFL,

    Plaintiff,

v.                                                              Case No. 05-72035

COMMISSIONER OF                                 HONORABLE AVERN COHN
SOCIAL SECURITY,

    Defendant.

_____/

**MEMORANDUM AND ORDER ADOPTING THE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION AND REMANDING CASE TO THE
ALJ FOR FURTHER PROCEEDINGS**

**I. Introduction.**

This is a social security case.  Plaintiff Linda Dimpfl appeals from the final determination of the Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB).  An Administrative Law Judge (ALJ) conducted a hearing and determined that Edwards was not entitled to benefits.  The Social Security Administration's Appeals Council denied review of the ALJ's decision.

Dimpfl filed this action for judicial review under 42 U.S.C. § 405(g).  Dimpfl and the Commissioner filed motions for summary judgment, and the matter was referred to a magistrate judge to consider the motions.  The magistrate judge issued a report and recommendation (R&R) that the ALJ's decision be affirmed in part but be remanded for further proceedings to consider an alternative basis for disability.  The Commissioner objects to the remand; Dimpfl did not object to the R&R's conclusion that substantial evidence supports the ALJ's denial of benefits on all but the alternative grounds.

For the reasons that follow, both motions for summary judgment are GRANTED IN PART and DENIED IN PART. The Court adopts the R&R.

## II. Background.[1]

### A.

Dimpfl was born on March 27, 1953. She is divorced and has two children. Dimpfl graduated from high school and completed two years of college; she has no degree. Dimpfl worked as a receptionist and office manager at unknown times. More recently she owned and operated a cleaning service from 1994 until about July, 2001. Dimpfl managed the business as well as cleaning houses.

In March, 2001, Dimpfl's husband informed her that he wanted a divorce. Dimpfl tried to change her husband's mind. On April 19, 2001, he served her with divorce papers. On April 20, 2001, Dimpfl's husband found a suicide note on the counter of their home. He found Dimpfl in bed with vomit scattered around the bed. Dimpfl had taken about 90 tablets of an over the counter sleeping medication. The husband called 911 and Dimpfl was taken to the hospital. Dimpfl was combative and uncooperative at the hospital. Doctors diagnosed Dimpfl with an acute drug overdose and depression. Dimpfl had no history of depression and stated her suicide attempt was the result of her unhappiness about her impending divorce.

The next day, on April 21, 2001, Dimpfl entered North Oakland Medical Centers for psychiatric observation. Dimpfl participated in individual and group psychotherapy and drug sessions and received antidepressant medication. Dimpfl's condition

---

[1] The background is gleaned from the parties' papers. The R&R sets forth the facts, some of which are repeated here.

2

improved significantly and she had no side effects from her medication.  Dimpfl appeared to have accepted the divorce.  The Center discharged Dimpfl on April 26, 2001, with an instruction to follow up with a psychotherapist and other physicians.

Dimpfl returned to her maid service business and lived with her sister or mother at different times.  She frequently cried while on the job.  Dimpfl's sister began assisting her.  Presumably Dimpfl began counseling as well, but there are no counseling session reports in the record.

From May through August, Doctor King Ang, her internist, treated Dimpfl regularly.  Dr. Ang monitored her condition and adjusted her medication.  Details of Dr. Ang's treatment are in the R&R.

In early July, 2001, Dimpfl closed her maid service business.[2]

On December 11, 2001, Doctor A.K. Jain wrote a letter indicating that he had been treating Dimpfl since October 9, 2001.  Dr. Jain concluded that Dimpfl was incapable of holding any job, was disabled, and that her recovery would depend upon her response to treatment.  None of Dr. Jain's treatment notes are part of the record.

On December 26, 2001, Wayne Byrum, MSW, CBT, wrote a letter to "Mr. Callahan"[3] stating that he had been treating Dimpfl since October 9, 2001.  Mr. Byrum wrote that Dimpfl continued to report many symptoms of depression.[4]  Mr. Byrum

---

[2] The specific date Dimpfl closed the business is unclear.  At different times, the record suggests that Dimpfl stopped working immediately after her attempted suicide, in early June, or in early July, 2001.  The R&R states that she stopped working and closed her business in early July, 2001.  Dimpfl did not object to this finding.  The Court adopts this finding.

[3] It is unclear who Mr. Callahan is.

[4] Mr. Byrum listed many of the same conditions reported by Dr. Jain.

3

opined that Dimpfl would need continued therapy 2 or 3 times per month, and her depression prohibited her from working. None of Mr. Byrum's treatment notes are in the record.

**B.**

Nine months later, on September 30, 2002, Dimpfl's disability insurance expired. This is the date by which Dimpfl had to be "disabled" to qualify for DIB. There is no medical evidence in the record for 2002. Dimpfl moved out on her own in August or September, 2002.

On May 12, 2003, Dimpfl filed for DIB benefits.

On July 28, 2003, Doctor R. Hasan, a psychiatrist, examined Dimpfl and summarized her condition in a letter for the State of Michigan Disability Determination Service (DDS). Dr. Hasan diagnosed Dimpfl with major depression, an anxiety disorder with panic attacks, and a Global Assessment of Functioning (GAF) score of 55.[5]

On August 25, 2003, Mr. Byrum completed two reports on Dimpfl after examining her: a Psychiatric/Psychological Examination Report (Report); and a Mental Residual Functional Capacity Assessment (Assessment). In the Report, Mr. Byrum stated that memory problems precluded Dimpfl from functioning independently on a sustained basis. Mr. Byrum noted that Dimpfl engaged in some activities, and had a GAF of 45. In the Assessment, Mr. Byrum reported that Dimpfl was "markedly limited" in 10 of the

---

[5] The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. A GAF of 41 to 50 means that the patient has serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 1994).

20 categories. Dimpfl was either "moderately limited" or "not significantly limited" in the other 10 categories.

On September 8, 2003, Doctor Donald Tate, Ph.D., a psychologist, performed an Assessment, like the one done by Mr. Byrum, and a Psychiatric Review Technique. Dr. Tate did not meet with or examine Dimpfl. He instead reviewed her available medical records. Dr. Tate's Assessment reported that Dimpfl was not "markedly limited" in any of the 20 categories, and only "moderately limited" in four categories. Dr. Tate opined that Dimpfl had a major depression and anxiety disorder without attacks and was capable of doing simple, unskilled work.

Dr. Tate's Psychiatric Review Technique also indicated that Dimpfl had medically determinable impairments of major depression and anxiety disorder. Dr. Tate considered the factors in two regulation listings: § 12.04 (Affective Disorders) and § 12.06 (Anxiety Related Disorders). Under the "B" criteria for the Listings, Dr. Tate indicated that Dimpfl had mild limitations in completing everyday activities and maintaining social function, and moderate limitations in maintaining concentration, persistence or pace, and had 1-2 episodes of decompensation. Dr. Tate did not complete the "C" criteria, which implicated only Listing § 12.04, and, if the "B" criteria was not met, was an alternative basis for finding Dimpfl disabled.

On March 4, 2004, Doctor Robert Erard, Ph.D., submitted a report in Dimpfl's divorce proceedings. The spousal support Dimpfl received was, in part, dictated by her psychological condition. Dr. Erard performed numerous tests on Dimpfl. The test results were inconclusive. Dr. Erard concluded that ample evidence supported a finding that Dimpfl suffered from a "chronic, severe and disabling Major Depressive Disorder

5

which substantially interferes with her cognitive efficiency, emotional stability, interpersonal effectiveness and multiple activities of daily living, including her ability to maintain sustained gainful employment." Dr. Erard recommended that Dimpfl undergo neurological testing and return to regular psychotherapy, including partial hospitalization for several weeks.[6]

On January 13, 2005, Doctor Violet Heise, Ph.D, a psychologist, wrote a letter stating that she had been treating Dimpfl since November 24, 2003.[7] Dr. Heise diagnosed Dimpfl with a major depressive disorder of moderate severity. Dr. Heise stated that Dimpfl was still unable to perform full-time employment. No treatment records from Dr. Heise are part of the record.

## C.

On January 18, 2005, the ALJ held a hearing on Dimpfl's application. Dimpfl testified that she weighed 180 pounds and attributed the weight gain to her medication. Dimpfl testified about her personal life, her attempted suicide, and her depression in the months that followed. Dimpfl testified that she had gotten better in some areas, but worse in others. She said her sister handled her finances and that she had trouble grocery shopping. Dimpfl testified that she could not focus or concentrate. Dimpfl testified that she had varied sleeping, eating, and social patterns. Dimpfl testified that she had assisted with planning "ladies' day" at her church. Dimpfl testified about her work history, and said she had applied to work as a secretary at her church in 2002 or

---

[6] It is unknown whether Dimpfl ever underwent additional testing with Dr. Silverman. No such test results are in the record.

[7] Dr. Heise states that Dimpfl was referred to her by Dr. Nigar Yousuf. Records of Dr. Yousuf's treatment of Dimpfl are not part of the administrative record.

2003.

Dimpfl testified that she was unable to return to her past work because she could not remember how to do it. While she had no physical limitation preventing her from working, Dimpfl testified that "keeping anything on a routine basis" was beyond her psychological abilities. Dimpfl did not think she could be reliable in even an uncomplicated job requiring very little interaction with other people.

Elizabeth Pasikowski testified as the vocational expert at the ALJ hearing. The ALJ asked Pasikowski whether a hypothetical person of Dimpfl's age, education, and physical and psychological condition could perform any work. Pasikowski testified that Dimpfl could perform certain jobs, and that about 20,000 such jobs existed in the regional economy. In response to a question from the ALJ, Pasakowski testified that it is possible a hypothetical person like Dimpfl would not be able to work in these jobs because of the inability to follow through with tasks and complete basic tasks of daily living, in addition to memory, concentration, and reliability issues.

### D.

The ALJ issued a decision on February 2, 2005. The ALJ found that Dimpfl's depression was "severe," as defined in 20 C.F.R. § 404.1521, but did not meet or medically equal any impairment in the Medical Listings referenced in 20 C.F.R. § 404.1520(d) prior to the expiration of her insured status. Specifically, the ALJ considered Listing § 12.04 and § 12.06. The ALJ concluded that Dimpfl's allegations were not fully credible because she had no further hospitalizations or emergency room treatment after her suicide attempt, she had lived on her own since August, 2002, her treatment was not well documented, her treaters relied on her descriptions of

7

symptoms, and there was evidence in the record that her divorce was not unexpected, as she had alleged.

The ALJ relied on Dr. Tate's opinion and rejected most of the opinions of Dimpfl's treaters. The ALJ gave Dr. Heise's opinion limited value because she submitted no records indicating that she had treated Dimpfl during her insured status, and her conclusion as to Dimpfl's ability to work was a decision reserved to the Commissioner. The ALJ did accept Dr. Heise's conclusion that Dimpfl could perform some tasks and interact appropriately with co-workers on a sustained basis.

The ALJ gave Dr. Erard's opinion "no significant weight" because he was a non-treating examining psychologist, and his opinion that Dimpfl was disabled was a decision reserved to the Commissioner. The ALJ concluded that Dr. Erard relied almost exclusively on Dimpfl's subjective complaints, her behavior during testing, and her physicians' conclusive statements of disability. The AJL noted that Dr. Erard acknowledged Dimpfl's motivation to respond unreliably during their session, as his report impacted Dimpfl's ability to obtain ongoing spousal benefits in her divorce action.

The ALJ gave Mr. Byrum's opinion no weight because he did not submit counseling records and his conclusion that Dimpfl could not work was a decision reserved to the Commissioner. The ALJ gave Dr. Jain's opinion no weight due his short-term treating relationship with Dimpfl.

The ALJ considered the following factors: the lack of treatment notes, Dimpfl's activities, her planning of a church event, her ability to shop for food, drive, and care for her personal needs, the lack of further hospitalizations, and her course of treatment consisting of only medications and therapy sessions.

8

The ALJ concluded that Dimpfl, as of the date last insured, had no physical limitations, but had some psychological limitations preventing her from performing her past relevant work. Despite this limitation, the ALJ concluded that Dimpfl was able to perform the jobs identified by the vocational expert, and Dimpfl was not disabled.

### III. Discussion.

### A. Legal Standard.

Judicial review of a Social Security disability benefits application is limited to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantiality of the evidence must be based upon the record taken as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). The portions of the MJRR that the claimant finds objectionable are reviewed de novo. See 28 U.S.C. § 636(b)(1)(C);

<u>Smith v. Detroit Fed'n of Teachers, Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).

## B. Analysis.

### 1. Introduction.

The regulations outline a five-step sequential evaluation process to decide whether a person is disabled.[8] The ALJ determined that Dimpfl did not satisfy step three, which states:

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. § 404.1520

Listing § 12.04 for "Affective Disorders" sets forth bases for being considered disabled.[9] An individual must have:

> (A) Medically documented persistence, either continuous or intermittent, of [a particular mental disorder]....
>
> AND
>
> (B) Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining social functioning; or
> 4. Repeated episodes of decompensation, each of extended duration;
>
> OR
>
> (C) Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability

---

[8] 20 C.F.R. § 1520a sets forth special considerations for mental impairments. These are not at issue in this case.

[9] As described above, the ALJ considered § 12.04 and § 12.06. Only § 12.04 is disputed in this case, as it is the only listing asserted in Dimpfl's motion as being analyzed erroneously by the ALJ.

> to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial suport, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

### 2.  The Motions.

Dimpfl's motion made two arguments as to why the ALJ's decision should be reversed: that she met Listing § 12.04(A)[10] and (B),[11] and that the ALJ erred in relying on Dr. Tate instead of crediting Dr. Erard's opinion. Dimpfl said the ALJ should not have relied on Dr. Tate because he never examined Dimpfl personally. The Commissioner's responded that Dimpfl was only asking for the evidence to be weighed differently, and that does not undermine the reasonableness of the ALJ's decision. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (A decision supported by substantial evidence will not be reversed simply because the evidence could have supported a contrary decision). The Commissioner said Dr. Tate's September, 2003, conclusion that Dimpfl could perform certain work provides substantial evidence supporting the ALJ's decision that Dimpfl was not disabled as of September 30, 2002, the date Dimpfl's insurance expired. The Commissioner said Dr. Erard's report covered examinations

---

[10] It is unclear whether the ALJ or magistrate judge found Dimpfl met § 12.04(A) or not. Given that the ALJ and magistrate judge's considered the remainder of § 12.04, the Court concludes that Dimpfl did meet § 12.04(A).

[11] Though Dimpfl made this assertion, she made no argument as to why she met § 12.04.

11

during December, 2003, and January, 2004, and Dr. Heise examined Dimpfl in November, 2003, meaning they did not treat Dimpfl on or before September, 2002. The Commissioner said, therefore, that those opinions were not probative of Dimpfl's functioning on or before September, 2002. In her reply brief, Dimpfl stated that she "meets listing 12.04"

In his R&R, the magistrate judge found that substantial evidence supported the ALJ's finding that Dimpfl was not disabled under Listing § 12.04(B), and that the ALJ did not err in his consideration of the medical evidence. However the R&R recommended remand of the case to the ALJ to consider whether Dimpfl would meet or equal the criteria in Listing § 12.04(C). The R&R says that "Dr. Tate's failure to assess Plaintiff under the "C" Criteria...leaves [the ALJ's] opinion that Plaintiff did not meet or equal the Listing, which relied almost entirely on Dr. Tate's findings, unsupported by substantial evidence. Therefore, this matter should be remanded so that an ALJ can make a finding regarding whether the evidence of record supports the presence of "C" Criteria." The magistrate judge thought that Dimpfl possibly satisfied Listing § 12.04(C)(3).

### 3. Objections.

Dimpfl does not object to the R&R's findings that substantial evidence supports the ALJ's consideration of the medical evidence or decision that she was not disabled under Listing § 12.04(B). Upon review of the record, the Court concurs with the magistrate judge's findings and adopts the R&R as to the "B" criteria.

The Commissioner objects to the R&R's finding that Dr. Tate's failure to consider the "C" criteria on the Psychiatric Review Technique form means the ALJ's decision that Dimpfl did not meet or equal the "C" criteria lacks substantial evidence. The

12

Commissioner makes the following arguments: (1) the ALJ considered the Listing § 12.04(C) criteria and found that Dimpfl did not satisfy it; (2) no doctor suggested Dimpfl met Listing § 12.04(C); (3) Dimpfl does not allege that she met Listing § 12.04(C); and, (4) the magistrate judge's speculation as to Dimpfl's ability to meet the "C" criteria is insufficient to remand the case.

### 4.  Conclusion.

The magistrate judge's recommendation that Dimpfl's case be remanded is not based on the ALJ's failure to consider the "C" criteria.  Instead it is based on the lack of substantial evidence supporting the ALJ's decision.  Dr. Tate did not complete the "C" criteria section of the form.  The fact that Dimpfl might not be successful in sustaining a "C" criteria basis for disability does not mean that substantial evidence supports the ALJ's decision on the "C" criteria.  While it is Dimpfl's burden to prove disability, it is the Commissioners burden to demonstrate that there is substantial evidence supporting its decision.

Accordingly, the Court adopts the R&R and REMANDS the case for further proceedings to complete the Listing § 12.04(C) analysis.

SO ORDERED.


Dated:  May 30, 2006                     s/Avern Cohn                           
                                         AVERN COHN
                                         UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 30, 2006, by electronic and/or ordinary mail.

                                          s/Julie Owens                         
                                         Case Manager, (313) 234-5160